## Gearhart, Appellant, v. Standard Steel Car Company.

*Corporations—Issue of stock—Payment of stock—Payment for stock out of earnings—Act of April 29, 1874, P. L. 73.*

A contract by which a person agrees to enter the employ of a corporation in consideration of a certain salary per year, and the setting aside to him of stock of the company of an amount stated to be paid for out of the earnings of the company, cannot be enforced so as to compel the company to issue or set aside the stock on the terms stated.  Such a contract violates the Act of April 29, 1874, P. L. 73, which provides that "no such corporation shall issue their bonds or stock, except for money, labor done, or money or property actually received, and all fictitious increase of stock, or indebtedness in any form, shall be void."

Argued Nov. 4, 1908.  Appeal, No. 3, Oct. T., 1908, by plaintiff, from decree of C. P. No. 3, Allegheny Co., May T., 1906, No. 98, dismissing bill in equity in case of Harry J. Gearhart v. Standard Steel Car Company.  Before FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ.  Affirmed.

Bill in equity to compel the issuing of stock of a corporation.

EVANS, J., filed the following opinion:

The plaintiff files his bill, alleging that the defendant is a corporation of the state of Pennsylvania, and that in the year 1901, while he was in the employ of the Pressed Steel Car Company, in the capacity of auditor and acting general manager, he was approached by one A. R. Fraser, who stated that he and J. M. Hansen and others proposed organizing a corporation to be known as the Standard Steel Car Company, and requested him, the plaintiff, to enter the employ of that company as general

manager, for which he would receive $7,500, a year, "and in addition thereto would have set apart for him twenty-five thousand dollars worth of the capital stock of the new company, at par, the same to be paid for out of the earnings of the company." That the proposition was accepted, the company organized, and the plaintiff entered into the employ of the defendant corporation, and continued in its employ for more than one year, during which time he received the salary of $7,500 a year as general manager of the company; that the stock has never been transferred to him, and prays, first: "That the contract made between the complainant and respondent for the execution and delivery to the complainant of certificates of the capital stock of the respondent, for two hundred and fifty shares, which stock is to be issued to the complainant, when paid for out of the earnings of the respondent, be decreed to be a binding legal obligation on the parties affected." And third: "That a decree be made ordering the respondent to issue to the complainant proper certificates of stock of the respondent in the total number of two hundred and fifty shares, the same being the stock which has been set aside for the complainant, upon the payment by him to the respondent of the difference in cash between the par value of the stock and the amount of earnings it should have credited to the complainant and applied to the payment and liquidation of the amount due on the aforesaid stock."

### FINDINGS OF FACT.

The. complainant, H. J. Gearhart, and J. M. Hansen and A. R. Fraser, in the summer of 1901, were all employees of the Pressed Steel Car Company. In the summer of that year J. M. Hansen and A. R. Fraser, with E. A. Shoen, C. T. Shoen and W. A. Shoen, associated themselves together with the object of organizing a corporation for the purpose of manufacturing steel cars. The complainant, H. J. Gearhart, was at that time auditor and acting general manager of the Pressed Steel Car Company, and A. R. Fraser, in October of 1901, went to the complainant and stated to him: "That there was a scheme on foot to organize a new steel car company in opposition to the Pressed Steel Car Company, that there had been several meetings of the promo-

ters; that they wanted Gearhart to go along, and there was a question raised as to whether he would go with them or not. He stated to Gearhart that they would give him the same salary he was receiving, and set aside $25,000 worth of stock for him, to be paid for out of the earnings of the new company." This proposition was accepted by Gearhart. The proposition of Fraser to Gearhart was discussed by the individual promoters, and acquiesced in by them, with the exception of J. M. Hansen. There was never any formal action taken by the promoters with reference to this proposition. The promoters, other than Fraser, however, understood that the proposition was that the stock should be paid for out of the dividends of the company to be organized. Gearhart and the other employees of the Pressed Steel Car Company resigned their positions with that company, and subsequently Gearhart attended the meetings of the promoters of the new company, was one of its incorporators, and a member of the board of directors for the first year. The proposition to transfer or set aside to Gearhart $25,000 of the stock of the Standard Steel Car Company was never submitted to the board of directors of that company, nor to its stockholders, and the stock was never so set aside to Gearhart on the books of the corporation. Gearhart remained in the employ, as general manager of the Standard Steel Car Company, for a little more than a year, during which time he received $7,500 a year, and then he went into the employ of the Southern Car & Foundry Company, a corporation in which the Standard Steel Car Company was interested, and remained with that company for a few months, when it went into the hands of a receiver, and his connection with the Standard Steel Car Company and its allied interests ceased. His severing his connection with the Standard Steel Car Company, and going into the employ of the Southern Car & Foundry Company, at a salary of $4,000 a year, was acquiesced in voluntarily by him and the Standard Steel Car Company.

CONCLUSIONS OF LAW.

That the bill should be dismissed at the cost of the complainant.

## OPINION.

The proposition made by Fraser to Gearhart is very vague. To quote the language of Gearhart, "He stated that·they would give me the same salary I was receiving, and set aside $25,000 worth of stock for me, to be paid for out of the earnings. Q. The earnings of the new company? A. Yes, sir."

It will be observed that there is no condition in this alleged contract as to the length of time that Gearhart was to be employed. He was to be the general manager of the company; he was to receive $7,500 a year, the same that he was temporarily receiving from the Pressed Steel Car Company, but, under the conditions of the contract, as he has stated them, he could have remained a year or he could have remained a month, and severed his connection with the Standard Steel Car Company without breach of his agreement. He testified that Fraser's proposition was that the stock should be paid for out of the earnings of the company. It will be observed that there is no specific condition of this contract as to what proportion of the earnings of the company should be applied to the payment of this stock. The testimony of Mr. Shoen is that the proposition, as talked of among the promoters, was that the stock was to be paid for out of the dividends, and presumably if that meant anything, it meant that it was to be paid for out of the dividends declared upon this stock. A pertinent inquiry arises here as to whom this stock belonged pending the fulfillment of the proposed contract made between Fraser and the complainant. The stock assuredly was not the property of the complainant. He does not allege that he had paid for the stock, or that he had given any obligation on his part to pay for it. Under the law of Pennsylvania the stock could be issued to him only upon his paying for the same, either in cash, property or labor, and he does not claim that either cash, property or labor of his paid for this stock; therefore, the stock did not belong to him. And even now, in his prayer, he does not ask that the certificates of stock be issued to him, excepting on condition that it has been paid for out of the earnings of the company. If, then, the stock was not the property of the complainant, it must have been the property of the corporation; it must have been stock in the

treasury of the corporation at that time. But stock in the treasury of the corporation is not capable of earning anything. Dividends may not be declared upon stock in the treasury of the corporation, and therefore while this stock remained the property of the corporation, it could never be paid for out of the earnings which it produced, or out of the dividends declared upon it. Unless, then, it be the contention of the complainant that the meaning of the proposition made to him by Fraser was that this stock should be set aside and issued to him when the entire earnings of the company had amounted to sufficient to pay for that stock, we see no possibility of the stock ever being paid for by the earnings of the company. This is pertinent when we take into consideration the provisions of the seventeenth section of the Act of April 29, 1874, P. L. 73: "No such corporation shall issue their bonds or stock except for money, labor done or money or property actually received, and all fictitious increase of stock, or indebtedness in any form shall be void."

It is argued by counsel for the complainant that if this corporation could have issued fully paid-up stock to this complainant for his labor, then it could enter into a contract to issue to him for his labor capital stock of the corporation, when it should be paid for out of the earnings of the company. But that is just what the act of assembly says a corporation may not do. It was not the purpose that this stock should be issued to the complainant, and paid for with his labor; the stock was to be paid for by the corporation itself, and was, therefore, a gratuity to the complainant. It was to prevent just such vague, uncertain, shifting agreements as this one purported to be that the legislature of the state enacted, in such clear and specific language, the consideration which a corporation is bound to receive for the issue of its stock. This is not a case where the corporation only is interested in declaring this supposed contract illegal; the fictitious issuing of corporate stock is a question of public policy; the legislature has made it so, and while corporations have been held many times to contracts that were ultra vires, when executed by the other party, that is only in case where the corporation alone is interested, and not the public.

*Error assigned* was decree dismissing the bill.

*Stephen Stone*, with him *Wm. A. Stone* and *Castle & Jarvis*, for appellant.—Stock may be issued outright by a corporation for services to be rendered in future: Shannon v. Stevenson, 173 Pa. 419.

Gearhart has not received his stock up to the present time, and under the contract was not to receive it until the earnings of the company would be equal to the amount of the capital stock. Of course "earnings" means "net earnings." This was decided in the case of Commonwealth v. Penna. Gas Coal Company, 62 Pa. 241, as follows: "Net earnings or income are the product of the business, deducting the expenses only. . . ." See also Commonwealth v. Ocean Oil Co., 59 Pa. 61; Union Pacific Railroad Co. v. United States, 99 U. S. 402.

*George B. Gordon*, with him *Wm. Watson Smith*, for appellee.

PER CURIAM, January 4, 1909:

The decree is affirmed at the cost of the appellant on the opinion of the learned judge of the common pleas.