## Colonial Biscuit Co., Appellant, *v.* Orcutt.

*Corporations—Stock—Issue of stock for services—Directors.*

In an equity case for the cancellation of stock issued to a director and officer of a corporation, a decree dismissing the bill will be sustained, where the court below finds as a fact that the stock was issued for services rendered in reorganizing the company, that the value of such services was determined by the directors, and that no fraudulent intent on the part of the directors was shown in connection with the issue.

Argued Jan. 22, 1919. Appeal, No. 173, Jan. T., 1919, by plaintiff, from decree of C. P. No. 3, Philadelphia Co., Dec. T., 1916, No. 4413, dismissing bill in equity in case of Colonial Biscuit Company v. Charles Orcutt. Before STEWART, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Bill in equity for the cancellation of stock.

FERGUSON, J., after stating facts and conclusion of law discussed the case as follows:

On May 13, 1908, a receiver was appointed to take over and conduct the business of the Colonial Biscuit Company. The receivership continued until December 15, 1913. About two years before the last date Charles H. W. Cliff, the president of the company, solicited the interest and services of the defendant in bringing about the reorganization of the company, telling him that he thought he could secure him a position in the company and some of the capital stock if the reorganization was accomplished. During that period of two years the defendant made efforts, most of them vaguely described, to induce some persons to take an interest financially in the corporation. He purchased a few claims of creditors, being afterwards reimbursed for the amounts thus expended. He induced the bank, which was a creditor of the company, to offer to extend a larger credit if certain bonds were deposited with the bank as additional security. The actual procuring of these bonds was the work of the president of the company. As a result, however, of their joint efforts the additional credit was obtained from the bank and the reorganization was assured of success. On December 2, 1913, nearly two weeks before the company passed out of the hands of the receiver, the defendant was elected a director and also the secretary and treasurer of the company. On the 5th day of December, 1913, an elaborate agreement participated in by bondholders and stockholders was made, which agreement was ratified by the board of directors. This agreement provided for the method of reorganization and among other things there was to be an increase in the capital stock from twenty-five thousand to one hundred thousand dollars. A part of this common stock was to be distributed as therein provided and the residue to remain in the treasury. As above stated, on December 15, 1913, the receivership ended.

When the reorganization of the company seemed about to be accomplished the defendant suggested to the president that he ought to have some of the stock. To this the president assented, but said it would have to be arranged later. No definite promise was made and no amount of stock was suggested. Some months after the reorganization was completed and while the defendant was acting as secretary and a member of the board of directors he again expressed his desire to have some of the capital stock, in consideration for his services rendered. To this suggestion the president replied it could not be done at that time, because the board of directors as then constituted would not approve. He agreed, however, to give a letter certifying that the company was indebted for 150 shares of stock for the services referred to. The letter was prepared and it was intended that it should be dated prior to the time of the reorganization. In point of fact the letter was dated January 10, 1915, more than a year after the reorganization, and instead of containing a certificate that the company was indebted for 150 shares of stock it declared that it was indebted for 15,000 shares. This was another blunder, as it is probable it was intended to state the par value of 150 shares.

On October 21, 1915, the then board of directors adopted a resolution that there be issued to the defendant 150 shares of common stock "in payment for services rendered in reorganizing the company." Following this resolution a certificate of stock was issued to the defendant. On December 21, 1916, the then board of directors passed a resolution rescinding and revoking the resolution of October 21, 1915, declaring the issue of stock without consideration and void, and instructing the president to institute proceedings to enforce the resolution for the purpose of having the stock cancelled. That resolution was afterwards ratified at a meeting of the stockholders held February 8, 1917, and these proceedings are for the purpose of compelling the cancellation of

the stock and for an injunction restraining the transfer thereof.

There is no evidence that anybody connected with the corporation knew of the understanding between Cliff and Orcutt prior to the reorganization of the company. There was no contract made by Cliff which could have been enforced against the company. Prior to the reorganization Cliff had merely said that he thought the defendant ought to have some stock but he neither promised it nor, if he did promise it, did he state the amount. Nothing was done with reference to the matter until nearly two years after the reorganization was completed, and during these years the defendant acted as director and secretary and treasurer, and as secretary and treasurer he received a regular salary.

There are features in the evidence which do not reflect favorably upon these two men. If the defendant was to receive stock for his services, it was not made known to the stockholders or submitted to the board of directors after the reorganization because that board was supposed to be so constituted that it was not thought such a proposition would be acceptable. No demand was made by defendant for compensation. That matter was postponed until a friendly board of directors was in office, and so far as the evidence shows the matter was not brought to the attention of the stockholders until after the stock was issued. In addition, there was a clumsy attempt to make a contract in writing and to antedate it, which by some carelessness failed. To all these matters the defendant was a party. The president of the company, in addition to his participation in the matters referred to, now desires for some reason to repudiate the matter which he was instrumental in bringing about. It is true the bill is filed by the corporation and the president is not a party, but he holds or controls a large part of the capital stock and is practically the only witness in support of the bill.

In our opinion the bill should be dismissed. It is true as a matter of law that capital stock may be issued only for money, labor done or property actually received, but we cannot say that the services rendered for the company by the defendant were not such services as could be compensated for by the issuance of capital stock. The company had been in the hands of the receiver for several years. The defendant's services were rather vaguely described, but there can be no doubt he assisted in procuring the reorganization. It may be he was not the sole cause in bringing about the result. The president may have had his part in it, but the latter apparently thought that what was done was of sufficient value to justify the action that was taken. To the board of directors was committed the power to administer the affairs of the corporation. They had a right to sell treasury stock for cash or for services. If, at the time of the resolution, the board of directors as then constituted recognized an obligation to compensate the defendant for his services by issuing 150 shares of capital stock it must be considered as having appraised those services and placing that value upon them. The value of the stock does not appear in evidence and we have no way of appraising it. As above stated, the president could not make a contract either before or after the reorganization which would bind the company. But if the board of directors, the legal custodians of the property of the corporation, ratified his indefinite promise and gave it form it is beyond our power to say there was no value given or that the value thus fixed was excessive.

This is not the case of an officer or director seeking compensation for services rendered during the term for which he was elected; neither is it the case of one instrumental in bringing about a formation or reorganization of a corporation who seeks to compel the enforcement of a contract made by one not authorized to make it. It is rather the case of an indefinite contract for services rendered in the past and having some substance, which

contract was formally ratified by the board of directors of the corporation. In such case a court of equity cannot grant relief.

The prothonotary is directed to notify the parties or their counsel of the filing of the above adjudication, and that unless exceptions thereto are filed within ten days a decree will be entered in accordance therewith.

A decree was entered accordingly. Plaintiff appealed.

*Error assigned* was decree dismissing the bill.

*E. Stanley Richardson,* for appellant.

*Henry J. Scott,* with him *Albert T. Hanby,* for appellee.

PER CURIAM, February 24, 1919:

Nothing need to be added to the very satisfactory opinion of the learned President Judge in the court below. None of his findings are lacking in adequate support in the evidence, while his conclusions of law commend themselves to our approval. The contention of appellant that statutory restrictions are conditions of the power in corporations to issue capital stock is conceded; but on the facts of this case there was no violation of any conditions; the stock issued to the plaintiff was for services rendered the corporation, the value of which was determined by the directors of the company. The compensation allowed for the services may have inclined towards extravagance, but that is not a matter for our consideration. It is impossible to derive any fraudulent intent on the part of the directors in connection therewith. For the reasons so clearly stated in the discussion of the case by the learned President Judge the appeal is dismissed.