# Petrishen *v.* Westmoreland Finance Corporation, Appellant.

Argued September 30, 1958. Before Jones, C. J., Bell, Musmanno, Jones and Cohen, JJ.

*Milton W. Lamproplos,* with him *Andrew S. Romito, Myron W. Lamproplos,* and *Eckert, Seamans & Cherin,* and *Cassidy & Lamproplos,* for appellants.

*Vincent E. Williams,* with him *Meyer W. Gordon, Robert W. Smith, Jr.,* and *Smith, Best & Horn,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 12, 1959:

This is an appeal from the entry of a decree by the court below ordering the individual appellants to deliver up for cancellation certain shares of stock purportedly issued to them illegally by the corporate appellant, and restraining both the corporate and individual appellants from issuing or transferring any of the corporate stock until compliance has been had with the decree directing cancellation.

The Westmoreland Finance Corporation was incorporated on March 15, 1950, for the purpose of engaging in the small loan business. The articles of incorporation authorized the issuance of $100,000 capital stock, divided into 200 shares each having a par value of $500. Nick Petrishen, Joseph Brinko, Edward Brinko, Jacob J. Ross, John Marzullo and Mary D. Ross each subscribed and paid for ten shares of stock. On the same date, the corporation entered into an agreement with Joseph Marzullo, who had had previous experience in the small loan business, which provided that Marzullo was to be the manager of the corporation and that he was "to sit in at all meetings" of the corporation's board of directors "with the powers and rights of a Director . . ." This agreement further provided that: "*Seventh*: When the Employer Company shall have, after expenses, earned funds in an amount equal to Thirty Thousand ($30,000.00) Dollars (the

amount contributed by the remaining officers and directors on the basis of Five Thousand ($5,000.00) Dollars each, then, whether the said Thirty Thousand ($30,000.00) Dollars is distributed or not *among* the original contributors, the proportionate share of Five Thousand ($5,000.00) Dollars each shall be allocated to said contributors. Thereafter the Corporation shall issue stock to the Manager in an amount equal to share held by each of the other officers or directors (after the allocation set forth above), so that thereafter all of the Directors, including the Manager, shall hold equal shares of stock in the said company, at which time the Manager shall formally be elected as a Director." This agreement was approved and ratified by *all* of the directors, who at that time also constituted *all* of the corporation's stockholders.

On March 16, 1950, the stockholders adopted a resolution authorizing the board of directors "to issue the capital stock of this corporation to the full amount or number of shares authorized by the Articles of Incorporation, in such amounts and proportions as from time to time shall be determined by the Board, and to accept in full or in part payment thereof such property as the Board may determine shall be good and sufficient consideration and necessary for the business of corporation." On May 2, 1951, after Marzullo had been in the corporation's service for over a year, the board of directors adopted the following motion: "Regularly moved, seconded, and carried that 10 Shares of Stock be issued to Joseph S. Marzullo; such shares to draw dividend only after $30,000.00 in profit has been earned as per the contract agreement . . ." It would appear from the minutes of the meeting that the number of directors required by the by-laws to constitute a quorum were not present. However, testimony was introduced to show that an additional director, whose presence was

not recorded in the minutes, actually did attend and did vote in favor of the motion.

The court below found that on April 18, 1952, the board of directors passed a motion to rescind its own authority to issue additional shares of stock. On March 25, 1953, the stockholders, by a share vote of 58 to 57, rejected a motion that no further stock should be issued except by the unanimous consent of the stockholders. However, the court below held that the stock of Joseph Marzullo, which was voted in opposition to the motion, had been improperly issued, and excluded it in determining whether or not the motion had been passed. As a result, the court below concluded that all the stock that had been issued since the directors' meeting of April 18, 1952 had been issued illegally, and should be returned to the corporation for cancellation.[1]

Appellees' basic contention, upheld by the court below, is that the initial written agreement between the

---

[1] The appellees in the present appeal are Nick Petrishen, Edward J. Brinko, Joseph Brinko and Charles J. Jacques. The original individual appellants are: J. Cherry, J. S. Marzullo, III, S. John Marzullo and Joseph S. Marzullo. The initial decree entered by the court below also directed the cancellation of stock issued to John J. Cherry, Edna Cherry and Jacob Ross, although they were not named as defendants in either the original or amended complaint. A supplemental decree was then entered joining these additional appellants, although they were afforded neither notice that a proceeding had been instituted against them, nor an opportunity to present evidence in their behalf. Regardless of the merits of the appeal as to the original appellants, it is obvious that the additional appellants were deprived of their basic rights, and as to them, the decree of the court below cannot be sustained. "The fundamental requirements of due process in a proceeding affecting property interests are (1) a notice of proceedings appropriate to the nature of the case and adequate to safeguard the rights of the parties and (2) an opportunity to be heard. [Citing cases].": Com. ex rel. Chidsey v. Keystone Mutual Casualty Co., 373 Pa. 105, 119, 95 A. 2d 664.

corporation and Joseph Marzullo is in contravention of the provision in the Business Corporation Law[2] that: "A. Shares of a business corporation shall not be issued except for money, labor done, or money or property actually received . . ." With this contention, we do not agree. In *Shannon, Receiver, etc. v. Stevenson,* 173 Pa. 419, 421-422, 34 A. 218, in recognizing the validity of an agreement whereby fully paid stock was issued to Stevenson as an inducement for him to assume the presidency of the corporation, we stated: "There is no inherent incapacity of a corporation to purchase property or labor and pay for it by stock instead of money. If the corporation here had paid defendant $1,000 in cash to leave his former situation and undertake its presidency, on condition that he invest the money in its stock, there could be no question of the validity of the transaction, yet it would in substance have been exactly the same . . . The proviso [under the Act of 1874, April 29, P. L. 81, Sec. 17] that no stock shall be issued 'except for money, labor done, or money or property actually received' does not prevent payment for labor or services bona fide to be thereafter rendered, any more than it prevents contracts to pay in advance for property to be furnished. A corporation in process of formation and not yet in actual operation may have no other mode of getting the necessary equipment to commence business." In the instant case, it is undisputed that there was a written agreement, ratified and approved by all the stockholders, providing for the issuance of stock upon the fulfillment of certain stipulated and expressed conditions in partial exchange for

---

[2] The Act of May 5, 1933, P. L. 364, Art. VI, §603. 15 PS §2852-603. The Constitution of Pennsylvania, Art. XVI, §7, provides, inter alia : "No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void . . ."

Marzullo's organization and operation of this small loan business in which he had had such previous experience as would admittedly be beneficial to both the corporation and its stockholders. We find nothing in this provision of the written agreement that offends either the Constitution of Pennsylvania, supra, or the Business Corporation Law, supra. As the court stated in *Grafton v. Masteller*, 232 F. 2d 773, 776: "Moreover, it is noteworthy that this case involves no flouting of the basic policy underlying Pennsylvania's stricture against issuance of stock without prepayment. The Supreme Court of Pennsylvania has stated that policy in these terms: '. . . The primary object of the constitutional provision was to prevent the jeopardizing of the corporate property and to stop frauds upon stockholders and innocent purchasers, by the issuance of securities not fairly representing money or property received by the corporation and consistent with this purpose, all that is required is that transactions involving the disposition of corporate securities must be bona fide, and not a mere device to evade the law and impose a greater obligation upon the corporation than there is any occasion for it to assume, in order to obtain the consideration received therefor.' Houghten v. Restland Memorial Park, 1942, 343 Pa. 625, 633, 23 A. 2d 497, 501-2; see also Bell v. Aubel, 1943, 151 Pa. Super. 569, 573, 30 A. 2d 617, 619."

*Gearhart v. Standard Steel Car Co.*, 223 Pa. 385, 72 A. 699, relied upon by both appellees and the court below is clearly inapposite. In the *Gearhart* case, there was at most a vague oral promise to compensate the plaintiff which was never formally adopted nor ratified by the promoters; in effect, the court recognized the validity of agreements similar to the one now before us, but found that no such agreement ever existed in that case.

Appellees' next position is that even if the original written agreement is valid, its modification by the board of directors on May 2, 1951 is not enforceable. This modification provided that ten shares of stock would be immediately issued to Marzullo, but that "such shares [would draw] dividend only after $30,-000.00 in profit has been earned as per the contract agreement. . ." Appellees' argument is two edged: first, that such a modification is *per se* illegal and invalid, and, second, that even if it be not illegal *per se,* the minutes of the directors' meeting at which the motion was purportedly adopted prove conclusively that it lacked the required number of votes for passage. Assuming, *arguendo,* that the motion was properly adopted, we find no merit in appellees' first contention that the modification was illegal. The motion was adopted by a majority of those delegated by the stockholders to transact the corporation's business. The financial interests of the original stockholders, as stipulated in the initial written agreement, unanimously approved and ratified by these same stockholders, were adequately protected. It is undisputed that appellant Marzullo performed valuable services on behalf of the corporation and these same stockholders for upwards of a year prior to the issuance of the stock. Furthermore there was no formal objection to the directors' action until almost a year after the transaction had transpired.[3] In

[3] It appears that at the directors' meeting of April 18, 1952, a motion which would have required Marzullo to return the ten shares pending a determination of the validity of their issuance was defeated. At the June 1952 directors' meeting, Marzullo rejected a proposal presented by Joseph Brinko, Edward Brinko and Nick Petrishen which would have increased his salary from $300 per month under the written agreement to $500 per month and waived all question as to his absolute ownership of the ten shares for "a new contract sharply modifying the provisions of the present working agreement."

*Colonial Biscuit Co. v. Orcutt,* 264 Pa. 40, 107 A. 315, we sustained the action of a board of directors in issuing stock to an officer of the corporation pursuant to an oral promise by the president for services much more vague than those rendered by Marzullo. In a *per curiam* affirmance of the court below, we stated (p. 45) : ". . . the stock issued to the plaintiff was for services rendered the corporation, the value of which was determined by the directors of the company. The compensation allowed for the services . . . is not a matter for our consideration. It is impossible to derive any fraudulent intent on the part of the directors in connection therewith." In our opinion the resolution providing for the immediate issuance of the stock to Joseph Marzullo and the waiver of the stipulated earnings provision in consideration for his services constituted a valid modification of the original written agreement.[4]

---

[4] Although neither party to the present dispute has raised the question, we do not believe that the modification is invalid because of a lack of consideration. In *Ross v. Pennsylvania Underwriters Co.,* 123 Pa. Superior Ct. 484, 490, 187 A. 62, a case most apposite to the instant one on the question of consideration, the Court stated: "Paragraph 7 was clearly intended for the benefit and protection of the appellant and not only could be waived, but, by a subsequent agreement or arrangement, appellant could make such changes as would be for the best interests of both parties. . . . Where the effort is not to contradict the terms of a written contract, but merely to show a subsequent modification, or waiver of something provided for in the contract, while the burden is on the party asserting the change, all that is required is that the evidence in support of the claim should be convincing . . . [citing authorities]. The testimony as presented was sufficient to warrant . . . [a] finding that paragraph 7 had been modified and its terms waived by the subsequent conduct and arrangement of the parties; *and consideration is implied from the mutual assent of the parties to the modification,*" [Emphasis supplied]. See also: *Elliott-Lewis Corporation v. York-Shipley, Inc.,* 372 Pa. 346, 94 A. 2d 47; *Friday v. Regent Improvement Co.,* 330 Pa. 481, 199 A. 914; *KoEune v. State*

Nor is appellees' contention that the motion was not validly adopted any more efficacious. At the time of the purported adoption of the modification, there were seven directors, exclusive of Joseph Marzullo. The minutes of the meeting state: "Present at the meeting were: Joseph Brinko, J. S. Marzullo, Jacob Ross, S. John Marzullo." The minutes were signed by Mary D. Ross, the Secretary of the Corporation, who was also a director. Appellees argue that since only three of the directors were recorded as being present, a majority, as set forth in the by-laws as constituting a quorum to transact business, was lacking, and the motion could not have been validly carried. However, appellant Joseph Marzullo (recorded in the minutes as J. S. Marzullo) when called by appellees as on cross-examination testified on direct examination by appellees' counsel that five directors[5] attended the meeting, thus contradicting the corporate minutes. This was further amplified when on cross-examination by his own counsel he stated that Mary D. Ross was the director who was present at the meeting but whose presence was not recorded in the minutes. His testimony was not controverted by any of appellees' witnesses.[6] In fact, appellee Joseph Brinko, one of the directors who attended the meeting and voted in favor of the modification, did

----

*Bank of Schuylkill Haven*, 134 Pa. Superior Ct. 108, 112, 4 A. 2d 234.

[5] Marzullo obviously considered himself a director or at least to have the right to vote as a director. However, we need not decide this issue on the present appeal. See footnote 7, infra.

[6] "One who calls an adverse party as upon cross-examination is concluded by his testimony, if uncontradicted [citing cases], *and this includes not only his testimony as developed by the party who called him, but also statements then elicited by his own counsel which are merely explanatory of such testimony.*" (Emphasis supplied). *Readshaw v. Montgomery*, 313 Pa. 206, 209, 169 A. 135. See also: *Kline v. Kachmar*, 360 Pa. 396, 61 A. 2d 825.

not refute or contradict Marzullo's testimony, although he testified after Marzullo on behalf of the appellees.[7]

It has long been the rule as stated in *Loeffler's Estate,* 277 Pa. 317, 323, 121 A. 186 that: "The minutes of a stockholders [or directors] meeting are not conclusive. *Errors therein may be explained . . . by extraneous evidence.* [citing authorities]" (Emphasis supplied) "Corporate minutes are *prima facie* evidence of the facts therein stated, but they are not conclusive; and parol evidence is admissible to explain or supplement them where they are ambiguous or their meaning is doubtful, *and errors may be corrected and omissions supplied where the minutes are incorrect or incomplete.* [Citing authorities]" (Emphasis supplied) *Moore v. Keystone Macaroni Mfg. Co.,* 370 Pa. 172, 179, 87 A. 2d 295. We are of the opinion that the uncontradicted

---

[7] The court below found that "The issuance of stock to the Manager as set forth in Paragraph 7 of these findings was supposedly authorized at a Board of Directors meeting at which, according to the minutes, *only four Directors were present one of whom was Joseph S. Marzullo,* to whom said stock was issued . . ." (Emphasis supplied) However, the court *en banc* in its opinion stated ". . . we are of the opinion that Joseph S. Marzullo, *was never elected as a director of this corporation, that he voted illegally as a director and as a shareholder . . .*" (Emphasis supplied) Although we do not necessarily agree with this conclusion, we need not consider its validity in order to dispose of the present appeal. Appellees admit in their brief that: "At . . . [the] time, [of the directors' meeting at which the issuance of. the stock was authorized], exclusive of the manager who could sit at director's meetings, there were seven directors of the company." It would therefore follow that four directors would constitute a majority, three of whom were recorded as being present at the meeting. If Joseph Marzullo is considered as a director, the number of directors would be increased to eight, with five constituting a majority. It is therefore obvious that the significant and determinative question is whether or. not Mary D. Ross was present at the meeting and that issue was not discussed by the court below.

testimony of appellant Marzullo was sufficient to demonstrate and rectify an omission in the present corporate records, and that the motion in question was properly adopted. It therefore follows that the ten shares of stock of Joseph Marzullo were legally voted at the stockholders' meeting of March 25, 1953, and that the attempted restriction on the issuance of the corporate stock was validly defeated.

Nor is this conclusion altered by the fact that the board of directors on April 18, 1952 attempted to rescind its right to issue stock. Such authority is initially vested in the stockholders of the corporation, but may be delegated to the board of directors. 11 Fletcher, Corporations, Section 5156. We know of no rule of law, however, that sanctions the rejection of this authority by the directors, once it has been validly conferred. In addition, the circumstances under which the motion was adopted militates against a conclusion that the directors intended to forestall the issuance of corporate stock indefinitely. Appellees' own witnesses testified that the purpose of the motion was to maintain the *status quo* of corporate affairs in contemplation of an immediate sale to another corporation. The evidence also demonstrates that the prospects for such a sale failed shortly thereafter. The reason for the motion having been terminated, it seems reasonable to assume that the motion itself, even if valid, should have lost its efficacy by February 12, 1953, when the first disputed stock was issued, some nine months after the meeting at which the motion was purportedly adopted. In view of the conclusion that we have reached that the corporate stock involved in the present appeal was properly issued, we need not consider the additional arguments advanced by appellants.

Decree reversed. Costs on appellees.