Friday et al. *v.* Regent Improvement Company, Appellant.

Argued March 23, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert E. Anderson,* with him *John A. Blair,* for appellant.

*W. W. Stoner,* with him *J. M. Stoner & Sons,* for appellees.

OPINION BY MR. JUSTICE MAXEY, April 18, 1938:

Plaintiffs brought an action in assumpsit against the defendant for $2,828 with interest, upon the following cause of action: Paul W. Huhn owned a certain lot of ground in Penn Township, Allegheny County, having a frontage of two hundred feet and a depth of five hundred feet. On or about March 1, 1927, the property was rented by Huhn to Jack Bowman and Earl C. Potts, doing business under the firm name of Potts & Bowman, at $50 a month, under a lease for thirty-eight months, ending May 1, 1930. One of the conditions of the lease was that Potts and Bowman would build upon the premises, at their own cost, a dance pavilion (which they subsequently did); and that they should own the pavilion with the right to sell it to any purchaser during the term of the lease or to remove it before the end of the term. On or about May 1, 1928, plaintiffs entered into negotiations with Bowman and Potts and with Huhn for the purchase of the pavilion, upon procuring an assignment, with the consent of Huhn, of the lease held by Potts and Bowman. On May 21, 1928, plaintiffs purchased from Potts and Bowman the dance hall or pavilion, paying $3,750 for it. They received a bill of sale for the pavilion and for certain personal property consisting of chairs, tables, and other equipment. On May 12, 1928, Huhn leased to plaintiffs the ground upon which the pavilion was erected, for five years, commencing May 1, 1928, for a rental of $50 a month until May 1, 1931, and thereafter $100 a month until the end of the term. The lease given by Huhn to plaintiffs contains the following paragraph: "It is further agreed by tenants that they will take out and pay for an insurance policy covering the

said dance pavilion, to the amount of $4,000, and to assign the said insurance policy and deliver the same to Lessor as security, in case of damage by fire, for the rent hereby secured."

It was contended that Huhn knew of the negotiations between plaintiffs and Potts and Bowman and assented thereto, knew that plaintiffs were going to pay $3,750 for the dance pavilion and assented thereto, and knew that they had paid this sum. It was further pleaded that Huhn procured plaintiffs to agree to insure the building for the sum of $4,000 and to transfer the policy of insurance to him *as security for the rent,* in the event that the building should be destroyed by fire, and that when plaintiffs undertook to procure insurance they found it difficult to do so in view of the fact that the building was erected on leased ground. Thereupon Huhn agreed to take out the insurance in his own name for the benefit of the plaintiffs, provided the latter agreed to pay for the insurance. This was done and plaintiffs paid the premiums. Huhn then organized a corporation known as the Regent Improvement Company, the defendant, which corporation is owned and controlled by Huhn. Appellant agrees that Huhn's actions "are in all respects binding upon the corporation." On April 5, 1929, Huhn conveyed to the Improvement Company, subject to the lease and plaintiffs' ownership of the building, the premises leased to plaintiffs. The insurance on the dance hall was then transferred to the Regent Improvement Company. This building was destroyed by fire on January 15, 1933.

It is further pleaded that at the time of the fire Huhn, representing the Improvement Company, "had consented to and was ready to renew the lease of the plaintiffs for the said premises for a term of five years, and in so agreeing, the said Paul W. Huhn was acting as the officer and agent of the Regent Improvement Company."

After the fire the Improvement Company brought actions against certain insurance companies to recover

$3,750, which the Improvement Company appropriated to its own use. Plaintiffs thereupon demanded payment from the Improvement Company of the amount of insurance received by it less $922, the latter being the entire credit to which defendant was entitled from plaintiffs for rent to the end of the term and for any installments of insurance premiums not due. The Improvement Company refused to comply with this demand. This suit followed and a verdict was rendered for the plaintiffs for the full amount claimed. Defendant's motion for judgment n. o. v. was refused. This appeal followed.

Appellant raises two questions: (1) It contends that there was no valid consideration for the alleged agreement on the part of the landlord to pay over to the tenants the fire insurance money which became due when the landlord's building was destroyed; (2) It contends that the charge of the court was prejudicial. Both of these contentions must be rejected.

The evidence is clear that when plaintiffs found that they could not procure insurance on the building because it was upon leased ground, Mr. Huhn agreed that he would take out the insurance in his own name and that the Friday brothers should pay for it, and that Huhn in case of fire should pay the money recovered from the insurance companies for the loss sustained to the Friday brothers, after deducting any money due him for rent. Appellant contends that because the Friday brothers had bound themselves to procure this insurance and pay for same by the provisions of the lease, that by this subsequent agreement they were simply performing a duty and that there was no consideration for it. The appellees' contention is that the consideration for the modified agreement refers back to the consideration for the original agreement and that therefore the agreement was predicated upon a sufficient consideration. What happened merely was a modification of a contract between the parties, the modification being that the bene-

ficiary *named* in the insurance policies should be Huhn (subsequently transferred to the Regent Improvement Company) instead of Anthony W. Friday and Walter E. Friday. The substance of the contract was not changed. That was that the policy should be assigned to the lessor "as security for rent." Appellant does not attempt to show that the taking out of the insurance ever had any *other* purpose than to secure the payment of the rent in case of fire. This purpose is fully served by the view the jury and judge of the court below took and by the judgment based on the jury's verdict.

In *York Metal & Alloys Co. v. Cyclops Steel Co.,* 280 Pa. 585, 124 A. 752, this court held that where the parties to a contract disagree as to its performance and enter into a second contract in substitution for the first, the compromise of their respective demands affords sufficient consideration to support the execution of the second contract. In 6 R. C. L., page 914, section 298 lays down this principle: "It is entirely competent for the parties to a contract to modify or waive their rights under it and ingraft new terms upon it. . . ." It is an elementary proposition that any contract can be modified with the assent of both contracting parties, provided, of course, the modification does not conflict with law or public policy. See 13 C. J., page 589, section 604.

The part of the charge which appellant particularly cites in support of its contention that it was prejudiced thereby is the part we have italicized in the following quotation from the charge: "If you believe that the landlord procured this insurance at the instance and request of these young men in carrying out the terms of this agreement, and he agreed to return to them the insurance in case of a fire over and above the amount of rent due under the lease, then they are entitled to recover. In other words, if you believe their story they are entitled to recover. On the other hand, if you believe the defendant, who testified he did not have any such understanding, that he did not agree to anything

of that kind, that they did not get the insurance, that he got the insurance and charged them with the premiums, then your verdict should be for the defendant. *They could make such a contract, but it would be an extraordinary contract. All the equities in this case are unquestionably with the tenants or plaintiffs. There is no question about that whatever.* They are the men who put their good hard cash into this more or less precarious investment. They were the ones to suffer in case of a fire. The young men were the ones who put their hard cash into this venture and they paid the money to get the benefit of the insurance; don't forget that; that is important. It was their cash that made it possible for this insurance to be paid."

In the light of the testimony in this case we think the language of the court below was justified. The defense here impresses us as being totally devoid of merit. After the fire, the defendant still had the premises it (or its predecessor, Huhn) originally leased at $50 a month. All the rent, including the increased rental of $100, has been paid. It was stipulated in the original lease to Potts and Bowman that the dance pavilion could be removed before the end of the term. When Potts and Bowman transferred their interests in the lease and in the pavilion to Friday brothers, the latter paid the former $3,750 for the dance pavilion. It was then agreed that instead of Bowman and Potts assigning their lease, a new lease should be made from Huhn to the Friday brothers. There was omitted from this lease the provision as to the removal of the building at or before the end of the term. It is intimated by appellees that this omission was an inadvertence, appellees' statement being that "the meeting [when Friday brothers bought out Bowman and Potts and got a new lease] was a very stormy one, and that the attention of everybody was diverted from what was the real purpose of the meeting." However, the omission referred to is immaterial on the issue of whether or not Huhn agreed, as appellees con-

tend, that "in the event of a fire he would take out any rent that was due him and pay the balance of the insurance money recovered" to Friday brothers. The jury found this averment well supported by proof.

The judgment is affirmed.