Rubin Brothers Waste Co., Appellant, *v.* Standard Equipment Company.

Argued May 21, 1951. Before Drew, C. J., Stern, Stearne, Jones, Bell, Ladner and Chidsey, JJ.

*Douglass D. Storey,* with him *Earl V. Compton, Samuel Handler, Storey & Bailey* and *Compton & Handler,* for appellant.

*Thomas D. Caldwell,* with him *Caldwell, Fox & Stoner,* for appellee.

Opinion by Mr. Justice Chidsey, June 27, 1951:

Rubin Brothers Waste Co., appellant, instituted this action in trespass against Standard Equipment Company to recover for the loss of its building, equip-

ment, fixtures, stock and supplies, sustained when its building was burned, allegedly as the result of the negligence of appellee's agent in the welding of a steel "I" beam to an upright steel column for the support of a roof upon an addition to appellant's warehouse building. A trial was had before a jury which returned a verdict for appellee.

Appellant filed its motion for a new trial asserting error in the charge of the trial judge with regard to (1) assumption of the risk by appellant as the result of a telephone conversation between Dale Dentler, an officer of appellee, and Robert Rubin, vice-president of appellant; (2) refusal of the trial judge to approve, without qualification, a point instructing the jury that the only danger of fire of which appellant was aware was that caused by spalls* falling directly down from the weld, that there was no evidence that the fire was caused thereby, and, therefore, no assumption of the risk of the fire; (3) permitting the jury to determine that William Pinter, an employe of appellant, had authority to erect guards against fire by spalls or sparks; and (4) allowing the jury to find that appellant, by reason of the telephone conversation, had agreed to provide men to guard against fire. The motion for a new trial was refused, final judgment entered and this appeal taken.

Rubin Brothers Waste Co., on May 29, 1947, was engaged in the purchase and sale of rags, paper stock and scrap, and in connection therewith maintained a one-story steel frame building at 3315 North Sixth Street, Harrisburg. A one-story cinder block addition thereto was in the process of construction. Robert Rubin, vice-president of appellant company, on that date, called the office of Standard Equipment Company,

---

* Drops of hot metal that fall down from the weld; sparks therefrom fly vertically and horizontally.      .   .    .

engaged in the business of welding contractor, and spoke with Dale Dentler, a foreman. After the nature of the welding to be done was described, Dentler testified that he requested permission to send two men in addition to the welder to guard against any fire hazard that might arise by reason of spalls falling down, but that Rubin advised him that *he* would provide the men to protect his property against such fire hazard. This was denied by Rubin.

John F. Bolendorf, one of appellee's employes, was sent with welding equipment to appellant's place of business on the same day. The work to be done was the welding of channels or cross-beams on the top of steel upright columns, four of which were located about one foot south of the south wall of the subsequently destroyed building. Inside the building and close to the south wall were stored bales of rags. Bolendorf was directed to the columns by Pinter who told him what was to be done. Two columns which stood twenty feet south of the south wall had been welded and as Bolendorf proceeded to the top of the columns approximately one foot south of the aforementioned wall, Pinter directed placing of corrugated sheet iron against the building and underneath the eaves as protection against flying sparks. Pinter also supplied protection below the welder to catch spalls. Placement of these guards left an open space of one to one and one-half inches between the eaves of the destroyed building and the sheet iron guards. This protection was furnished by and at the direction of Pinter, without discussion or suggestion on the part of Bolendorf. As work on the third column was being completed, fire was discovered in a bale of rags inside the warehouse. This fire ultimately destroyed the warehouse and the equipment, fixtures, stock and supplies contained therein.

During the process of welding, Rubin appeared and observed the work being done and noted the steel

shields which his employes were using for fire protection.

Appellant contends that the fire was the natural and probable result of sparks which flew from the weld and not from spalls which dropped to the ground, and, therefore, it could not be charged with voluntary assumption of a risk of which it had no knowledge. In support thereof, it relies upon Dentler's testimony that fire from this source was the only one brought to the attention of Rubin during their telephone conversation. It is argued that the charge of the trial judge in this regard was not clear. Appellant also contends that the trial judge erred in permitting the jury "to infer from the erection of guards by an employe of plaintiff as a protection against fire from such sparks that plaintiff had promised defendant to furnish protection against such fire hazard". Appellant further asserts that the trial judge erroneously allowed an inference of implied authority in Pinter or of an instruction to him to erect fire protection, to be used by the jury in determining the correct version of the telephone conversation.

The basic difficulty with appellant's entire argument is that it is factually supported only by what appellant sought to have the jury determine, rather than based upon facts which the jury has determined from conflicting evidence. The facts involved must, by reason of the verdict of the jury, be viewed in a light most favorable to appellee, and it must be given benefit of every inference and deduction reasonably to be made therefrom: *Deli, et ux., Admrs. v. Chadderton,* 365 Pa. 102, 74 A. 2d 102.

Appellant, at the trial, advanced two theories to the jury with regard to the cause of the fire. They are set forth as follows in the opinion of the court below: "Although there was no direct testimony concerning the cause of the fire, in arguing to the jury counsel

for the plaintiff advanced two theories as to how it might have been started. First, it was contended that the rags were ignited by sparks which traveled upward from the weld; and secondly, that they were ignited by molten spalls falling downward from the weld. In regard to the first contention, Mr. Pinter testified that there was an opening of approximately an inch and a half between the rafter and one end of the sheeting which had been placed under the eaves. This opening was over two feet (27″) from the weld. Plaintiff's counsel suggested that the rising sparks from the weld reached this opening, ricocheted through it, traveled across an 8-inch beam, and then fell downward a distance of 8 or 9 feet to the place where the fire was discovered. The other suggestion made by plaintiff's counsel was that the molten spalls fell down from the weld through nail holes in the upright sheeting and then passed through the side wall of the building on to the rags. To support this theory, plaintiff introduced testimony indicating that there were open spaces between the pieces of sheet iron which formed the building wall and this sheeting also contained numerous 'nail holes'."

A litigant should not be permitted to argue a given theory to a jury and then successfully complain on appeal that the trial judge submitted that theory to the jury under proper instructions. Clearly, the jury had the right to determine that the cause of fire may have been as appellant contended—that spalls fell from the weld through nail holes of the upright sheeting and passed through the side wall of the building onto the rags. Accepting this theory of appellant as fact, it is clear that the charge of the court complained of with respect to danger from this source was not error. It would serve no useful purpose to review in detail the challenged portions of the charge. It is sufficient to state that a reading thereof clearly re-

veals that the facts to be found were left wholly to the jury and that there was no error with regard to the submission of the issue of voluntary assumption of risk.

Complaint is specifically made, however, that the trial judge, in discussing the actions of Pinter in directing the placing of corrugated sheet iron, permitted the jury to determine whether he was instructed so to do, that is, whether he was authorized "And if he was instructed to take charge of that protection, how would that influence you in arriving at the truth of that telephone conversation?". That Pinter was so authorized could properly have been determined from the circumstances adduced. He had been told by Rubin to advise the welder what he was to do. His duty to his employer was to see that the welding was accomplished. He was the one man who was in charge of the premises. He had experience in placing steel columns. Rubin saw the welder at work, saw the way in which the work was being done, saw the steel plates used for shields, and tacitly, at least, approved of all Pinter had done. There was sufficient evidence to permit the jury to find that Pinter had the authority to direct the measures that were taken for fire protection against both spalls and sparks.

Direct proof is not necessary to establish an agent's actual or apparent authority; it may be established by circumstantial evidence: 2 Am. Jur., page 356; *Brock, et al. Exrs. v. Real Estate-Land Title and Trust Company,* 318 Pa. 49, 53, 178 A. 146 (1935); *Hahnemann Hospital v. Golo Slipper Company, Inc.,* 135 Pa. Superior Ct. 398, 401, 5 A. 2d 605 (1939). Whether Pinter had been instructed or authorized to take charge of the fire protection was a matter which directly related to the telephone conversation wherein Rubin, as the jury might properly have concluded, stated that he would supply men to protect the property against fire.

It was entirely proper that the jury be permitted to consider the effect of the authorization to Pinter upon the credibility of Rubin as regards his testimony concerning the telephone conversation.

Judgment affirmed.