## Tara Ann, Inc. *v.* Sun Ray Drug Company, Appellant.

Argued November 30, 1955. Before STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Bernard M. Borish,* with him *Alvin H. Dorsky* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*William Ginsburg,* with him *Ginsburg & Weisberg,* for appellee.

OPINION BY MR. JUSTICE BELL, January 3, 1956:

Plaintiff brought an action of assumpsit for goods sold and delivered to defendant.

On June 16, 1952, Frank L. Twitty, President of plaintiff-seller, met with the cosmetic buyer of defendant at defendant's place of business in Philadelphia for the purpose of discussing the sale by plaintiff to defendant of a certain product used by women to create a streak in their hair. They made an oral agreement which included such items as a schedule of newspaper advertisements, radio advertisements, method of displaying the item, the payment of a special bonus to sales personnel of defendant for selling the product and the allowance to defendant of certain discounts. After all the above terms had been agreed upon, defendant requested the merchandise be sent to defendant on consignment. This request plaintiff refused stating that the transaction would have to be an outright sale. From that point on, there was a conflict in the testimony.

Plaintiff testified that defendant agreed to pay for all merchandise it had sold at the end of thirty and sixty days following delivery and to pay for the balance of the merchandise at the end of ninety days. Defendant, on the other hand, testified that it agreed to pay for whatever merchandise had been sold at the end of each thirty day period and that defendant could return whatever merchandise eventually proved unsaleable.

Prior to the first shipment of merchandise plaintiff received three written *purchase orders* dated June 16, 1952, from the defendant, on *one* of which appeared in pencil the words "Pay as sold every 4 weeks". "Terms 2%* ~~10 days EOM~~". The first shipment was made by plaintiff on June 18, 1952, and on the 24th of June, 1952 the balance of the merchandise was shipped to defendant in Philadelphia. *Immediately upon shipment* plaintiff sent written invoices to the defendant calling for payment *for all the merchandise.* Monthly thereafter statements were forwarded to the defendant likewise calling for payment for all of the merchandise which was shipped in that month by plaintiff to defendant. In September, 1952 plaintiff sent telegrams and letters to defendant requesting payment. During all that time defendant raised no objections to the request for payment in full of the merchandise shipped to it and did not assert its position of a consignment orally or in writing until December 15, 1952. Furthermore, defendant utterly failed to make payments in accordance with what it claimed was the written agreement it entered into—it made no payment even for the goods it sold until October 22, 1952—although the pencil notation made by defendant on the shipping order of June 16 required payment every four weeks. The only other payment made by defendant was on January 4, 1954, after suit was started and more than a year after the last sale of the merchandise made by defendant.

Defendant contends that by deleting on its order blank the words "10 days EOM", leaving the words which are inserted in pencil "Pay as sold every 4 weeks 2%" (printed) "the time for payment became indefi-

---

* Printed.

nite in duration. Payment was no longer required by the end of the month but was to be made as the merchandise was sold."

Defendant seeks a judgment n.o.v. on the theory that its order dated June 16th, which contained the above mentioned penciled words "Pay as sold every 4 weeks" plus the deletion, constituted a written contract when goods were thereafter shipped by plaintiff to defendant. It then invokes the familiar rule that all preliminary negotiations and agreements orally made are merged in and superseded by a written contract; and that parol evidence by plaintiff was inadmissible to contradict or vary the written contract in the absence of fraud, accident or mistake. This rule is totally inapplicable to the facts in the instant case. The order blank did not constitute a *written* agreement between the parties and certainly did not purport to cover the entire agreement of the parties. See *Bardwell v. The Willis Co.*, 375 Pa. 503, 100 A. 2d 102.

Defendant correctly contends that parties to an oral agreement, or indeed to a written agreement, can subsequently make a new and valid agreement changing the prior agreement.* However this principle does not help the defendant nor entitle it to an n.o.v. because the words on the order blank, together with all the other facts in the case, create at best for defendant an ambiguity which only the jury could resolve.

---

* In *Elliott-Lewis Corp. v. York-Shipley, Inc.*, 372 Pa. 346, 350, 94 A. 2d 47, this Court said: ". . ., it is well settled that a written agreement may be modified by a subsequent (written or) oral agreement and that this modification may be shown by writings or by words or by conduct or by all three: Betterman v. American Stores, 367 Pa. 193, 80 A. 2d 66; Knight v. Gulf Refining Company, 311 Pa. 357, 166 A. 880; Friday v. Regent Improvement Co.. 270 Pa. 481, 199 A. 914."

In the light of the foregoing record, it is easy to understand why the jury returned a verdict for plaintiff.

Judgment affirmed.