**SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY**

v.

**TRANSIT CASUALTY COMPANY.**

Civ. A. No. 69–1818.

United States District Court,
E. D. Pennsylvania.

April 27, 1976.

Henry W. Sawyer, III, Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

Norman Paul Harvey, Liebert, Harvey, Herting, Short & Lavin, Philadelphia, Pa., for defendant.

### MEMORANDUM AND ORDER

BRODERICK, District Judge.

Defendant Transit Casualty Company ("Transit") has moved this Court for a new trial or for a judgment n. o. v. After carefully considering all the grounds urged by defendant, this Court has determined that it must deny the motion.

This action was tried before a jury and resulted in a verdict for plaintiff, Southeastern Pennsylvania Transportation Authority ("SEPTA"). Plaintiff sought to recover from defendant, its insurer, losses in excess of $50,000 resulting from plaintiff's liability for personal injury and property

damage. Defendant argued at trial that it should not be required to pay plaintiff's claim because plaintiff did not give notice of the claim as required under the policy. Plaintiff, however, asserted that subsequent to the policy's implementation the parties had agreed to an alternate notification procedure, which had been followed by the parties for more than eight years. Defendant denied that any agreement had been made and claimed that no such course of conduct had been followed. The question to be decided by the jury was whether the notice provision of the policy was changed by the parties by agreement and course of conduct so as to require notice by plaintiff only when in its judgment the case was likely to involve liability to defendant, and whether plaintiff gave such a notice and made a reasonable exercise of judgment.

The parties stipulated the following facts which were read to the jury:

On March 1, 1958, the defendant, Transit Casualty Company (hereinafter referred to as "Transit") issued to Philadelphia Transportation Company, (hereinafter referred to as "PTC") an insurance policy in which Transit undertook to insure PTC against losses resulting from PTC's liability for personal injury and property damage in excess of $50,000 per occurrence. This policy renewed for a period of three years, the excess liability insurance coverage which Transit had provided to PTC since March 1, 1955.

The policy, on a standard Transit form, provided:

### SECTION VI

"NOTICE OF OCCURRENCE, CLAIM OR SUIT. The Insured shall give to the Company written notice of any occurrence, which in the judgment of the Insured is likely to involve liability of the Company hereunder, within ten (10) days after knowledge thereof, and shall give like notice within ten (10) days of any claim or suit where the amount claimed or sued for is in excess of the underlying loss stated in the schedule."

### SECTION VII

ADMINISTRATION OF CLAIMS. "The Insured, subject to the conditions herein, shall be responsible for the investigation, settlement, or defense of any claim made, or suit brought or proceeding instituted against the Insured, and shall furnish to the Company all copies of summons and pleadings filed in each suit, and a complete investigation report of each claim or suit which is likely to involve liability of the Company hereunder . . . ."

The policy did not require, and Transit made clear to PTC that it did not want, notice from PTC of all accidents involving PTC vehicles or all of the claims for personal injury and/or property damage made against PTC, but only those with a value greater than $50,000. The interpretation of the contract provisions and their application by the parties is the basis of this lawsuit.

On December 27, 1960, one Ruvenest Davis suffered an injury as a result of an accident involving a PTC bus, and on January 24, 1962 she commenced an action in the Court of Common Pleas of Philadelphia County against PTC and another defendant. That lawsuit alleged, inter alia, that the accident was the result of the negligence of one or both of the defendants. In accordance with Philadelphia Court rules, the Complaint filed on her behalf sought damages "in excess of $5,000", but specified no particular amount claimed. No notice was given to Transit at the time of the occurrence or upon the filing of the Complaint.

The Davis action came to trial in June of 1968. On June 5, 1968, Mrs. Davis and her counsel purported to be ready to proceed to trial in the absence of a settlement. PTC's co-defendant (and his insurance carrier) refused to contribute anything by way of settlement. PTC notified Transit that day of the plaintiff's settlement demand in the amount of $150,000 and of the position taken by PTC's co-defendant. At the conclusion of the presentation of evidence in the Davis

trial nine days later, but prior to submission of the case to the jury, PTC advised Transit that the judge had asked whether PTC would pay $100,000 by way of settlement of the case.

The jury returned a verdict against PTC on June 18, 1968, which award was in the amount of $300,000. On June 19, 1968 this verdict was reported to Transit and two days later Transit wrote to PTC advising PTC that Transit was disclaiming liability under its policy because of the date and manner in which notice of the claim was presented to Transit.

On September 30, 1968 SEPTA acquired all of the assets of PTC and assumed all of its liabilities. For the purposes of this action, SEPTA is PTC's successor in all respects.

SEPTA paid $150,000 in settlement of the case on April 9, 1969 and thereafter commenced this action for the $100,000 it wished Transit to contribute under the insurance policy. Transit refuses payment upon the grounds that the notice of the Davis claim violated the terms of the insurance policy relieving Transit of any liability for this claim.

■ In ruling on defendant's motion, we are compelled to view the evidence and the inferences therefrom in a light most favorable to the plaintiff, the verdict winner. *Thomas v. E. J. Korvette,* 476 F.2d 471 (3d Cir. 1973). Defendant contends that there were numerous errors at trial and that the Court should therefore grant its motion for a new trial or judgment n. o. v. The alleged errors include statements in the Court's charge, the Court's failure to give a directed verdict and the Court's admitting certain documents into evidence.

■ Motions for a new trial require the exercise of discretion by the Court whose ". . . duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5] at 59–160; *Thomas v. E. J. Korvette, Inc.,* 476 F.2d at 475. The jury's verdict may be vitiated only if manifest injustice will result if it were allowed to stand. The Court may

not substitute its own judgment for that of the jury merely because it may have reached a different conclusion. To grant a motion for judgment n. o. v., the Court must find as a matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict, *Neville Chem. Co. v. Union Carbide Corp.,* 422 F.2d 1205, 1210 (3d Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Such a motion ". . . may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's Federal Practice* ¶ 50.07[2] at 2356. See *Easterly v. International Harvester Corp.,* C. A. No. 73–1027, filed January 7, 1976 (E.D.Pa.).

A. *The Court's Charge.*

1. Failure to Clarify Issues.

■ The defendant claims that the Court's charge failed to clarify the issues for the jury or relate the law to the facts. However, following the Court's charge but before the jury retired, counsel were given the opportunity to object to the charge. Defendant did not raise any such objection to the Court's charge. Defendant's failure to take such exception at that time precludes it from now making this argument. Rule 51 of the Federal Rules of Civil Procedure provides, in part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." If defendant was dissatisfied with the Court's alleged "failure to accurately identify the issues", it should have called the matter to the Court's attention so as to give the Court an opportunity to take corrective action before the jury began its deliberations. *Don Kemper Co. v. Beneficial Standard Life Insurance Co.,* 425 F.2d 221, 222–23 (3d Cir. 1970).

2. Jury Improperly Construed Contract.

■ The defendant argues that the Court improperly allowed the jury to construe the

meaning of the policy because the Court, not the jury, should have made this interpretation. However, defendant never requested the Court to "construe the policy" and never objected to the Court's instruction on this basis. Furthermore, the question to be decided by the jury—whether the notification procedure specified in the policy had been modified by a subsequent agreement and a course of conduct—was unequivocally explained to them. The defendant also contends that the Court should have instructed the jury as a matter of law that absent a finding that the policy terms were modified or waived, the verdict must be in favor of the defendant. The Court in its charge did instruct the jury that if they did not find that the notice provision was changed by the parties by agreement and course of conduct and that plaintiff did not give the notice required by the policy, then their verdict should be for ·the defendant. (N.T. 5–36—5–37).

3. Misstatement of Law on Interpretation of Insurance Policy and Course of Conduct.

■ Defendant contends that the Court erred by misstating the law governing the interpretation of an insurance policy, and by charging the jury that the parties' course of conduct could change the written terms of the policy or constitute a waiver by defendant. The question argued by the parties, and charged by the Court to the jury (N.T. 5–29 to 5–32), was whether subsequent to the issuance of the policy the parties had changed the contract by agreement and course of conduct. The Court quoted the language of the policy verbatim and instructed the jury respecting its significance:

Now the law is that the terms of a contract may be changed only with the full understanding and agreement of both parties to the contract. Without such an agreement and understanding the terms of the contract cannot be changed, so you must find whether such an agreement or understanding did exist that in some way changed the notice provisions of the policy. (N.T. 5–33).

"[I]t is well settled that a written agreement may be modified by a subsequent (written or) oral agreement and that this modification may be shown by writings or by words or by conduct or by all three." (Citations omitted). *Elliot-Lewis Corp. v. York-Shipley, Inc.*, 372 Pa. 346, 350, 94 A.2d 47, 49 (1953); *see also Arndt, Preston, Chapin, Lamb & Keen, Inc. v. L–M Mfg. Co.*, 163 F.Supp. 406, 412 (E.D.Pa.1958); *Dora v. Dora*, 392 Pa. 433, 141 A.2d 587 (1958). The Court made clear that the burden was on plaintiff to prove its allegations that the parties had made and carried out a subsequent agreement adopting an alternate notification procedure:

If you find that SEPTA was required under this policy, as a result of agreement or course of conduct or otherwise, to give notice when in its judgment it was likely to involve liability to Transit, and that they gave such a notice, and if you find that SEPTA made a reasonable exercise of judgment in connection with that notice, then you should bring in a verdict for SEPTA.

On the other hand, if you find that SEPTA did not give notice as required by the policy, in that connection you are going to have to determine whether or not there was a waiver by the course of conduct; you are going to have to determine whether there was an agreement that I have heard evidence on.

In any event, if you find that SEPTA did not give the notice that is required by that policy or that SEPTA did not make a reasonable exercise of judgment in connection with the Davis matter, then you will bring in a verdict for Transit. (N.T. 5–36—5–37).

■ Defendant also argues that the Court erred by charging on the construction to be given to an ambiguity in the language of the policy in that the defendant claims that the notice provision was not ambiguous. It was contended by the plaintiff and testimony was presented that the notice provision of the policy was unclear and ambiguous. The Court charged the jury that it had heard the contention that the terms of the policy relating to notice were unclear

and that when there is an ambiguity or lack of clarity the law says the ambiguity or lack of clarity should be resolved against the party who wrote the instrument which, in this case, was the defendant. The Court also charged the jury that where there is no ambiguity or lack of clarity the law does not permit looking beyond the language of the parties in interpreting the contract. (N.T. 5–32—5–33).

### 4. Charge on Waiver and Course of Conduct.

Defendant claims that the Court erred in charging the jury that the parties' course of conduct could change the provisions of the policy and that the Court gave no guidance to the jury on the issue presented in connection with such course of conduct. Plaintiff presented testimony that over a period of years after the issue of the insurance policy, plaintiff notified defendant of a claim only when in its judgment it was likely to involve liability in excess of $50,000 and that the defendant never objected to this procedure. The Court charged the jury that it had to determine whether the parties had agreed to a modification of the policy and whether their course of conduct was evidence of the modification. In its charge the Court pointed out that isolated instances do not necessarily and do not usually constitute a course of conduct which evidences an agreement to change the terms of the policy. (N.T. 5–34—5–35). In so charging the jury, the Court followed the language submitted by the defendant in its point for charge No. 11 and charged in accordance with Pennsylvania law. *See Dora v. Dora*, 392 Pa. 433, 141 A.2d 587 (1958). *See also United States v. Alpha-Continental*, 273 F.Supp. 758 (E.D.N. C.1967).

At the close of the charge the defendant asked that the issue of waiver be taken from the jury in that there was insufficient evidence to warrant a finding of waiver. There was no objection to the charge on waiver. As the Court pointed out at this time, the issue was not whether defendant had waived the giving of notice but wheth-

er there was a subsequent agreement and course of conduct between the parties which changed the notice provision of the contract so that the plaintiffs had to give notice only when in their judgment there would be liability in excess of $50,000. (N.T. 5–42—5–43). The Court's charge makes clear the importance of plaintiff's evidence in establishing whether or not the parties had modified the contract by agreement and course of conduct.

### 5. Failure to State Defendant's Position Accurately.

Defendant contends that the Court did not fully and correctly state its position that plaintiff was required to notify it of any claim for damages or settlement exceeding $50,000, and that the Court overstated and misstated the evidence. However, the notice provision in the policy on which defendant relies was not only read to the jury (N.T. 5–25—5–26) but was introduced into evidence and could be examined by the jury during their deliberations. The Court's charge made defendant's position abundantly clear:

> Now Transit claims that SEPTA breached the insurance contract with Transit by failing to give Transit a notice of Mrs. Davis's claim as required under that insurance policy. SEPTA claims that it gave the notice as required.

> \* \* \* \* \* \*

> They claim, first of all, that there was no agreement in existence between Mr. Francis of SEPTA and Mr. Martin of Transit which in any manner changed the notice required under the policy.

> Transit also claims that although the rules of the Philadelphia courts may not allow strict application of the terms of the policy relating to notice and suit, still SEPTA was, nevertheless, bound to notify Transit whenever there was—I think they used the term—exposure in excess of $50,000.

> \* \* \* \* \* \*

> [I]f you find that SEPTA did not give notice as required by the policy, in that

connection you are going to have to determine whether . . . there was an agreement that I have heard evidence on.

In any event, if you find that SEPTA did not give the notice that is required by that policy or that SEPTA did not make a reasonable exercise of judgment in connection with the Davis matter, then you will bring in a verdict for Transit. (N.T. 5–29, 5–31, 5–36 to 5–37).

And, again, defendant never objected to the Court's charge on the ground that its position had not been sufficiently explained to the jury or that plaintiff's position had been overemphasized.

B. *Directed Verdict on Issue of Waiver.*

Defendant's next assignment of error is that the issue of waiver should not have gone to the jury in that the plaintiff never introduced testimony that defendant knew or should have known that plaintiff only reported cases when Mr. Francis, plaintiff's general claims attorney who handled all claims made by plaintiff under the defendant's policy, believed plaintiff was likely to incur damages exceeding $50,000, or that defendant voluntarily acquiesced in this method of reporting claims. However, Mr. Francis testified that he and Mr. Martin, defendant's Vice President in charge of claims, orally agreed that in light of the practice in Philadelphia of suing "for an amount in excess of X dollars" instead of suing for a fixed amount and in light of the excessive nature of settlement demands, the provision in the defendant's policy calling for notice where the amount claimed or sued for exceeded $50,000 was incapable of application; therefore they agreed that notice of a claim should be given by plaintiff only when, in plaintiff's judgment, the claim was likely to involve liability on the part of defendant. (N.T. 1–50 to 1–56). A comprehensive chart covering the relevant period and showing the dates of all accidents in which plaintiff was involved, the instituting of suit, the settlement demand, the trial and the notification to defendant was introduced by plaintiff to support Mr. Francis' testimony concerning the parties' agreement as evidenced by their course of conduct. On a motion for a directed verdict, the Court must draw all inferences and consider all of the evidence in the light most favorable to the party opposed to the motion. *Boeing Company v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969).

> . . . [I]f there is . . . evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motions [for a directed verdict] should be denied, and the case submitted to the jury.

On the basis of Mr. Francis' testimony, there was abundant evidence for the jury to consider in making a determination as to whether the notice provision of the policy was changed by the parties by agreement and course of conduct so as to require notice by plaintiff only when in its judgment the case was likely to involve liability to defendant.

C. *Documents Improperly Admitted Into Evidence.*

Defendant argues that documents showing the course of conduct of the parties after June 5, 1968, were improperly admitted into evidence. Defendant does not claim that any prejudice resulted from their introduction, but argues that they might have served to confuse the jury. Plaintiff offered the letters to rebut defendant's argument that Mr. Francis should have arrived at a different conclusion as to the extent of liability in the Davis case by showing that in many other cases apparently as serious as the Davis accident representatives of defendant came to the conclusion that liability on defendant's part was unlikely. The defendant has been unable to point to any prejudice as a result of the admission of these letters into evidence. The Court properly determined that the documents were relevant to the actions taken by the parties while operating under the policy. Their relevance is clear and their admission proper.

The defendant in making its allegation of error has in effect taken isolated parts from the Court's charge and has ap-

parently ignored the charge in its entirety. It is well settled law that in determining if there is error in the Court's charge it must be read as a whole, and if the instructions taken together properly express the law applicable to the case, there is no ground to claim a trial error, even though an isolated and detached clause is in itself incomplete or ambiguous.

While we have discussed herein only those contentions which were briefed and argued, we have, however, reviewed the record and considered all of the grounds alleged by the defendant in its motion for a new trial or judgment n. o. v. and have determined that there are no grounds for awarding a new trial or a judgment n. o. v.

For all of the aforementioned reasons, we deny defendant's motion.