Edward ST. CLAIR, Plaintiff,

v.

John M. PIPAL, Orlen G. Wood, Ilene
M. Sheahan and John Doe,
Defendants.

No. 81–C–9.

United States District Court,
E.D. Wisconsin.

June 25, 1985.

Merrick R. Domnitz, Milwaukee, Wis., for plaintiff.

Rudolph M. Conrad, Asst. City Atty., Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This action was tried to a jury over a three-day period, beginning on December 5, 1983. Throughout the litigation—including trial—of this matter, the plaintiff claimed damages for personal injuries allegedly suffered by him during the course of his arrest by defendant City of Milwaukee Police Officers on June 26, 1980, on the Summerfest grounds in Milwaukee, Wisconsin. Specifically, he maintained that the injuries he sustained were proximately caused by the defendants' use of excessive force, effectively depriving him of his due process and equal protection rights under the United States Constitution.

The defendants, on the other hand, held throughout these proceedings that the force they used in arresting the plaintiff was not excessive but reasonably necessary under the circumstances. They further contended that at all times they acted in good faith and in accordance with their duties as law enforcement officers.

At the conclusion of the three-day trial, the jury returned a special verdict, finding that none of the named defendants had violated the plaintiff's constitutional rights under the circumstances of his arrest in 1980. Based on this finding, the Clerk of Court entered judgment that the plaintiff take nothing, that the action be dismissed on its merits, and that the defendants be awarded their costs incurred in defending this lawsuit.

Presently before the Court in this matter is the plaintiff's motion of January 6, 1984, for judgment notwithstanding the verdict, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, or, in the alternative, for a new trial, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure. The thrust of the plaintiff's argument in support of these alternative motions is that, although there is some evidence in the record to support the jury's finding, the verdict is nonetheless against the substantial weight of the credible evidence. Summarizing the admittedly conflicting testimony with respect to the circumstances that precipitated the altercation between the parties and eventually led to his arrest by Officers John M. Pipal, Orlen G. Wood, and Ilene M. Sheahan, the plaintiff contends that the testimony of some four, independent witnesses to the incident supports his account and substantially discredits that offered by the defendants:

This Court heard the two days of testimony in this case. The clarity of recollection and precision of detail relating to the blows struck against the plaintiff as he was helpless on the ground were unmistakable. Four witnesses, David Niessen, Joseph Spak, Gregory Dornoff and Donna Schwartz, who did not know each other and had never spoken to one another about this incident, all took the stand and testified that [defendant] Wood struck [plaintiff] St. Clair in the face numerous times with his weighted sap. None of the witnesses testified that St. Clair was continually struggling. None testified that St. Clair even struck a blow once Wood arrived on the scene. Yet each testified to a bloody and brutal "police beating." ...

Four citizens of this city, only one of whom, Niessen, had ever met the plaintiff and none of whom had ever met the defendants, testified under oath at deposition and at trial that they saw—not that they thought they saw—but that they saw Detective Wood strike St. Clair in the head and face six to twelve times.

That night St. Clair took fifty-seven stitches to his head and face. The next day reconstructive dental work was begun on the tooth knocked out clean at the gum line. Blood clots formed in his lips and knots rose in his head.

Plaintiff's *Memorandum in Support of Post-Trial Motions* at 5 (January 6, 1984). As indicated, the plaintiff characterizes the testimony of the defendants as largely contradicted and impeached by these eye-witness accounts and, in this regard, suggests that the nature and scope of his injuries as recorded in the trial record can be reconciled only with his version of the incident. Concluding that the jury verdict thus stands against the great weight of the credible evidence adduced and, as such, constitutes a miscarriage of justice, the plaintiff seeks an order directing the entry of judgment notwithstanding the verdict or, in the alternative, a new trial on the parties' opposing claims.

Predictably, the defendants oppose the entry of any order modifying or overturning the jury verdict returned on December 8, 1983. In specific response to the petition for judgment notwithstanding the verdict, the defendants argue simply that, because the plaintiff failed to move for a directed verdict, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, at the close of all the evidence, he is now precluded from petitioning for relief under Rule 50(b). In response to the plaintiff's companion petition for a new trial, the defendants suggest that the clear weight of the evidence supports their account of the subject altercation and does not substantiate the plaintiff's version of the relevant facts.

Recounting in some detail the undeniable discrepancies in the testimony adduced at trial, the defendants nonetheless record their strong disagreement with the plaintiff's descriptions of those incidents precipitating his arrest and of the precise nature and scope of the force used to bring him under control. In this context, the defendants characterize as unequivocal and substantially undisputed the testimony of one Kevin Casey, as follows:

The testimony of Kevin Casey was that he was with Joseph Spak, who testified for the plaintiff, but that he, Casey, saw the beginning of the fight and was the one who drew Spak's attention to the fight. Mr. Casey is the only witness who saw the entire incident from its beginning to its end and was in the best position to make a judgment concerning whether the force used by the officers was reasonable under the totality of the circumstances. His testimony on this point was unequivocal. He stated without reservation that the force used by the officers was solely to restrain and gain control of St. Clair and was not excessive.

Defendants' *Memorandum in Opposition to Post-Trial Motions* at 3 (January 23, 1984). Moreover, they note that the plaintiff's own witnesses did not view the entire incident and, accordingly, provided testimony at trial inconsistent with that offered by others at the scene. In summary, the defendants characterize the plaintiff's case as based on "the self-serving testimony of the plaintiff and his good friend, Niessen, and the contradictory, incomplete and inconsistent testimony of the other three ... witnesses"; on this basis, the defendants' suggest that the Court would be guilty of an abuse of its discretion if it now overturned the special verdict and granted a new trial on the basis that the jury's findings were against the clear weight of the evidence.

As indicated by the descriptions of the positions articulated by the parties in support of and in opposition to the pending post-trial matters, the Court has carefully considered the merits of the two motions in the context of well-established standards for analysis under Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure. In this undertaking, the Court has reviewed with care its notes taken during the course of the three-day trial in this matter and has re-examined the several exhibits introduced and received throughout those proceedings. Based on this analysis, the Court concludes, for the reasons set forth below, that both post-trial motions must be denied.

Rule 50(b) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

The Seventh Circuit's most recent codification of the touchstones to be applied by the trial court in ruling on a motion for judgment notwithstanding the verdict is found in *Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1213 (7th Cir.1985):

> ... The standard ... is whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in a light most favorable to the party against whom the motion is directed. *See, e.g., Syvock v. Milwaukee Boiler Mfg. Co., Inc.,* 665 F.2d 149, 153 (7th Cir.1981). Any conflicts in the evidence must be resolved in favor of the resisting party, and every permissible inference from the evidence must be resolved in favor of the party resisting the motion. *Wisconsin Liquor*

*Co. v. Park & Tilford Distilers Corp.,* 267 F.2d 928, 930 n. 1 (7th Cir.1959). However, a mere scintilla of evidence will not support a verdict and an entry of judgment n.o.v. would be proper. *Gunning v. Cooley,* 281 U.S. 90, 94 [50 S.Ct. 231, 233, 74 L.Ed. 720] (1930); *La Montagne* [*v. American Convenience Products Inc.* ] 750 F.2d [1405] at 1410. In other words, if there is insufficient evidence upon which a reasonable person could properly base a verdict, entry of judgment n.o.v. is appropriate. *See La Montagne,* 750 F.2d at 1410.

Similarly, in *Estate of Clyde Davis v. Marguerite Johnson,* 745 F.2d 1066, 1070 (7th Cir.1984), the Court of Appeals observed that the standard is a demanding one: "The motion should be denied where the evidence ... is such that [people] in a fair and impartial exercise of their judgment may reach different conclusions." Under this exacting approach, "there would perhaps not be many cases in which [the appeals court] could conclude that a jury behaved irrationally." *McKinley v. Trattles,* 732 F.2d 1320, 1323–1324 (7th Cir.1984).

■ It is generally held that a jury's verdict may be vitiated only if manifest injustice will otherwise result; in this regard, the trial judge may not substitute his or her own judgment for that of the jury merely because he or she may have reached a different conclusion. *Southeastern Pennsylvania Transportation Authority v. Transit Casualty Company,* 412 F.Supp. 839, 842 (E.D.Pa.1976); *cf., Ries v. Sanders,* 34 F.R.D. 468, 470 (N.D.Miss. 1964) ("... [T]he fact that the court may feel that the testimony is unworthy of credit is not a proper ground for granting judgment notwithstanding the verdict for the question of credibility of witnesses is within the jury's sole province"). Rather, the Court must find as a matter of law that the record does not contain a sufficient factual foundation upon which the verdict might be justified and that, without weighing the evidence, there can be but one reasonable conclusion as to the proper judgment. *Miceli v. Interressantskapet Sea Trans-*

*port,* 413 F.Supp. 776, 779 (S.D.N.Y.1976); *Marder v. Conweb Corporation,* 75 F.R.D. 48, 54 (E.D.Pa.1977).

■ Finally, it is well-established that a necessary prerequisite to any Rule 50(b) petition is a motion for a directed verdict pursuant to Rule 50(a) made at the close of all of the evidence. *McNulty v. Borden, Inc.,* 542 F.Supp. 655, 657 (E.D.Pa.1982); *Moran v. Raymond Corporation,* 484 F.2d 1008, 1014 (7th Cir.1973), *cert. denied,* 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974). In fact, if the plaintiff fails to move for a directed verdict during the course of the trial, that party's request for judgment notwithstanding the verdict is untimely and of no legal effect. *Williams v. Fenix & Scisson, Inc.,* 608 F.2d 1205, 1207 (9th Cir.1979); *cf., Geldermann & Company, Inc. v. R.A. Hartely & Son, Inc.,* 543 F.Supp. 1062, 1062–1063 (N.D.Ill. 1982) ( . . . [A] motion for j.n.o.v. cannot be made unless a motion for directed verdict was made by the moving party at the close of all the evidence").

As the defendants in this case have accurately noted, the plaintiff failed to move the Court for a directed verdict, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, at the close of all of the evidence. Although, under other circumstances, the Court would be inclined to reach and address the substantive merits of an important motion like the present, it feels obliged to deny it on the sole basis that the movant has failed to meet the fundamental, procedural prerequisite—namely, moving for a directed verdict pursuant to Rule 50(a). The Court's disposition of this initial request is not, however, dispositive of the companion motion for a new trial, for which no such procedural prerequisite exists.

■ Indeed, Rule 59(a) of the Federal Rules of Civil Procedure establishes the broad power of the trial court judge to grant a new trial "to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." It is generally held that a motion for a new trial is addressed to the sound discretion of the Court and is properly granted if it will effect substantial justice; in this regard, the Court has the inherent right, if it believes that a fair trial has not been had, to set aside the jury's verdict and order a new trial. *Cecil Corley Motor Company v. General Motors Corporation,* 380 F.Supp. 819, 859 (M.D.Tenn. 1974); *cf., Kaufman v. Atlantic Greyhound Corporation,* 41 F.Supp. 252, 254 (S.D.W.Va.1941) (offensive verdict set aside and new trial granted to prevent a miscarriage of justice).

■ In deciding whether to reopen an action, the Court, in the exercise of its discretion, must balance the need for prompt and efficient handling of litigation in federal courts against the attainment of a just resolution of the particular dispute at hand. *Bell Telephone Laboratories, Inc. v. Hughes Aircraft Company,* 73 F.R.D. 16, 22 (D.Del.1976), *aff'd,* 564 F.2d 654 (3d Cir.1977), *cert. denied,* 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978); *cf., Browder v. Director, Department of Corrections,* 434 U.S. 257, 271, 98 S.Ct. 556, 564, 54 L.Ed.2d 521 (1978) (Rule 59 is "based on interest in speedy disposition and finality"). In this context, a motion brought under Rule 59(a) is not merely intended to secure a forum for the relitigation of old matters or to afford the parties the opportunity to present the case under new theories; instead, the motion is a device properly used to correct manifest errors of law or fact or to present newly discovered evidence. *Evans, Inc. v. Tiffany & Company,* 416 F.Supp. 224, 244 (N.D. Ill.1976); *Illinois Central Gulf Railroad Company v. Tabor Grain Company,* 488 F.Supp. 110, 122 (N.D.Ill.1980).

■ Among other purposes, Rule 59(a) is properly invoked by the trial court to grant a new trial on the grounds that the jury's verdict is contrary to the clear weight of the evidence adduced at trial. *Lincoln Carpet Mills, Inc. v. Singer Com-*

*pany,* 549 F.2d 80, 82 (8th Cir.1977); *cf., Sandlin v. Pearsall,* 427 F.Supp. 494, 496 (E.D.Tenn.1976) (where jury has plainly disregarded credible evidence, "the duty arises for the trial judge to check the jury's power to render a final and binding verdict ...")- The Court's decision to grant or deny a motion for a new trial will not be disturbed absent a showing of clear abuse of discretion; three factors typically used to determine whether such an abuse has, in fact, occurred, are (1) deference to the trial judge, who has had an opportunity to observe the witnesses and to consider all the evidence in the context of a living trial rather than upon a cold record; (2) deference to the jury's determination of the weight of the evidence and the quantum of damages; and (3) the constitutional allocation to juries of questions of fact. *United States v. Horton,* 622 F.2d 144, 147 (5th Cir.1980); *cf., Harris v. Chanclor,* 537 F.2d 203, 207 (5th Cir.1976) (holding that "all the factors underlying the review of a ruling on a new trial motion press in the direction of leaving the trial judge's ruling undisturbed").

▮ Measured against these rather high and exacting standards, the Court, as indicated above, simply cannot conclude that the plaintiff is entitled to the new trial he now seeks. Although the complete trial record plainly establishes several, material disputes as to the circumstances of the plaintiff's arrest, the Court would be hard-pressed to conclude that the evidence lies so overwhelmingly in the movant's favor that the verdict returned by the jury must be rejected. In viewing all of the evidence in the light most favorable to the defendants, the Court is of the unequivocal view that individuals might reasonably and impartially exercise their judgment to reach different conclusions as to the occurrence of any constitutional violations in this matter. In this context, the Court is able to identify in the record substantial grounds upon which the jury verdict might reasonably be justified.

Among other things, the plaintiff testified that he made no derogatory or demeaning remarks to defendant Pipal and further denied that he swung at the officer with his fists. Yet defendant Pipal and the plaintiff's own companion, David Niessen, contradicted the prosecution version with respect to both of these matters. Moreover, none of the plaintiff's other eyewitnesses saw the initial confrontation between the plaintiff and defendant Pipal, thus enabling any of them to defend or refute the conflicting accounts offered.

Similarly, there were significant conflicts in the evidence adduced with respect to the circumstances of the actual altercation and subsequent arrest; perhaps most notable among them was defendant Wood's unequivocal denial that he struck the plaintiff in the face or forehead with his sap during the course of the fight, notwithstanding the equally unequivocal assertions to the contrary made by the plaintiff's principal eyewitnesses. To be sure, defendant Pipal testified that he repeatedly hit the plaintiff in the face with his fist during the altercation; it is the plaintiff's position, however, that the medical evidence adduced at trial suggests that the blows he received were considerably more severe in nature than this defendant's testimony suggested. Finally, to further complicate an already ambiguous record, eyewitness Kevin Casey, who apparently viewed the incident from beginning to end, testified that, in his view, the force used by the arresting officers was not unreasonable but was intended merely to secure control over the plaintiff.

The Court's summary description of the relevant testimony and documentary evidence demonstrates that, precisely because the parties presented opposing descriptions of the factual basis for this lawsuit, it was properly left to the jury to assess the credibility of the several opposing witnesses and to allocate to each such weight as his or her testimony deserved. In so scrutinizing all of the relevant testimony, the jurors acted entirely within their purview by determining, as they apparently did, that the account offered by the defendants and their witnesses was more believable than that presented by the plaintiff and his. Under these circumstances, the Court

opines that the important factual determinations within the unique province of the jury should not be upset. Accordingly, because it can identify in the record no manifest error of law or fact or no substantial injustice in the special verdict returned on December 8, 1983, it will deny the plaintiff's motion for a new trial.

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES the plaintiff's motion for judgment notwithstanding the verdict, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. Furthermore, the Court hereby DENIES the defendant's companion motions for a new trial, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.